# PURCHASE AGREEMENT

SOLD TO: Anthony Aurgemma (FIRST / MIDDLE I. / LAST)
HM. PHONE (CELL): (401) 641-6400 BUS. PHONE: (401) 739-1000
DATE: 5/25/06
ADDRESS: 375 Gilbert Stuart Drive Warwick, RI 02818
NEW ☑ USED ☐

| | YEAR | MANUFACTURER | MODEL | SERIAL NO. | STOCK NO. |
|---|---|---|---|---|---|
| BOAT | 2007 | Azimut | 43 | | |
| MOTOR | 2007 | Cummins (twin) | QSB 5.9 (425HP each) | | |
| TRAILER | | | | | |

Forward Deck sunbathing cushions
Black mesh windshield cover (front & sides)
Decor exclusive
Teak laid cockpit floor
Teak laid swim platform
Chain counter w/ bridge controls
Bow thruster
Trim tab indicator on flybridge
Double Racor filters on main engines
Extra pair watertight stereo speakers
CD changer
Refrigerator in cockpit
Flybridge table
Convertible sofa/bed in salon (in lieu of standard)
Two lamps in salon
Folding cockpit table
Set of towels w/ Azimut mark in each head compartment
1 set of linens per cabin (total of 2)
1 set of linens for sofa bed
1 set of pottery
Mosquito net to the portholes
TV package (LCD in salon and master stateroom)
Raymarine new E-series style (E-120) color radar chart plotter
New E-series style (E-120) color flybridge repeater

Additional included options
Raymarine 48-nm Radar Ante
Second control for electric search light
Hydraulic Passarelle
Freight, make ready and commissioning
Full Coast Guard Kit
Add:
110v outlet on bridge
Flagpole
- Bridge cover

Note: Deal contingent up acceptable financing to buyer

DESCRIPTION OF TRADE-IN
TRADE: 2005 Searay 390 Sundancer
TRADE-IN DELIVERY DATE:

| | |
|---|---|
| TOTAL CASH DELIVERED PRICE | 540,000 — |
| LESS TRADE | 260,000 — |
| BALANCE | 280,000 — |
| PLUS TAXES | |
| BALANCE | |
| REGISTRATION AND TITLE SERVICE | |
| Administration Fee | 300 — |
| Fuel to be billed separately | |
| BALANCE | |
| LESS DEPOSIT ON ORDER | |
| PLUS TRADE-IN DEBT | |
| BALANCE DUE | |

BUYER IS SOLELY RESPONSIBLE FOR THE PAYMENT OF ALL APPLICABLE LOCAL, STATE AND/OR FEDERAL TAXES.

BUYER AGREES THAT THE BALANCE DUE ON DELIVERY WILL BE PAID BY CASHIER'S CHECK, WIRE TRANSFER, OR A TIME SALE. IF A TIME SALE, THIS AGREEMENT IS NOT FINAL AND BINDING ON SELLER UNLESS (1) BUYER'S CREDIT HAS BEEN APPROVED BY A BANK OR FINANCE COMPANY THAT AGREES TO PURCHASE A RETAIL INSTALLMENT CONTRACT BASED UPON THIS AGREEMENT, (2) APPROPRIATE FINANCING DISCLOSURES ARE MADE AND (3) BUYER HAS EXECUTED A RETAIL INSTALLMENT CONTRACT AND SECURITY AGREEMENT.

THIS AGREEMENT IS NOT FINAL AND BINDING ON SELLER UNLESS APPROVED AND SIGNED BY A MANAGER OF SELLER.

BUYER ACKNOWLEDGES RECEIVING A FULLY COMPLETED COPY OF THIS AGREEMENT. BUYER ACKNOWLEDGES READING AND UNDERSTANDING ALL OF THE TERMS AND CONDITIONS IN THIS AGREEMENT, INCLUDING THE TERMS AND CONDITIONS ON THE REVERSE SIDE OF THIS AGREEMENT.

SEE THE REVERSE SIDE OF THIS AGREEMENT FOR IMPORTANT INFORMATION REGARDING LIMITATIONS OF WARRANTIES.

ESTIMATED DELIVERY DATE: ____

FOR SELLER: ____ SALES CONSULTANT

APPROVED: ____ MANAGER

SIGNED X [signature] 5/25/06 BUYER

SIGNED X ____ BUYER

## ADDITIONAL TERMS AND CONDITIONS

1. **MANUFACTURER'S WARRANTY.** The boat, motor and accessories sold pursuant to this Agreement are only subject to applicable manufacturer's warranties, if any, except as otherwise expressly provided in this Agreement.

2. **DISCLAIMER OF WARRANTIES: THE BOAT, MOTOR AND ACCESSORIES BEING PURCHASED PURSUANT TO THIS AGREEMENT ARE SOLD BY SELLER "AS IS" AND SELLER MAKES NO WARRANTIES ON ITS OWN BEHALF, EXPRESS OR IMPLIED, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE,** ***unless*** **Seller gives Buyer a written warranty on its own behalf or Seller enters into a service contract in connection with this sale or within 90 days of sale. If Seller gives Buyer a written warranty on its own behalf or enters into a service contract in connection with this sale or within 90 days of sale, then any implied warranties shall be limited in duration to the duration of Seller's written warranty or service contract. IN ALL CASES, SELLER SHALL NOT BE LIABLE FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES ARISING FROM THE BREACH OF THIS AGREEMENT, ANY EXPRESS OR IMPLIED WARRANTY OR OTHERWISE, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW.**

3. **DELIVERY.** Buyer understands that Seller may not have in stock, the boat, motor, and/or accessories being purchased pursuant to this Agreement, and that Seller may have to order such boat, motor and/or accessories from the manufacturer. In such event, Buyer agrees that the delivery date specified on the reverse side hereof is subject to any delays, from whatever cause occurring in the manufacturer's delivery of the boat, motor, and/or accessories to Seller. Buyer further agrees that Seller shall not be liable for any delay caused by circumstances beyond Seller's reasonable control, nor shall any such delay be grounds for cancellation of this Agreement. If the boat, motor and/or accessories have not been received by Seller by the specified delivery date, Seller agrees to notify Buyer when such boat, motor, and/or accessories are ultimately received by it. Buyer agrees to take delivery of the boat, motor and/or accessories from Seller, and to pay the balance of the purchase price, within ten days of receiving such notice. The boat, motor and accessories purchased pursuant to this Agreement are delivered F.O.B. at Seller's location designated on the front side of this Agreement. Delivery of the boat, motor and/or accessories being purchased pursuant to this Agreement is subject to payment in full of the balance due.

4. **BUYER'S FAILURE; LIQUIDATED DAMAGES.** If Buyer fails to take delivery and pay the full balance due within said ten day period, then Buyer agrees to pay (a) Seller interest on the balance due at the lesser of eighteen percent per annum or the maximum rate permitted to be contracted for by applicable law, and (b) a per diem storage charge, until Buyer pays the balance of the purchase price. Alternatively, Seller shall have the right to cancel this Agreement without further notice to Buyer. In the event of such cancellation, Buyer shall thereupon become indebted to Seller in an amount equal to all sums received by Seller as deposits, and that Seller may retain said deposits as and for liquidated damages within the meaning of section 2-718 of the Uniform Commercial Code. Buyer agrees that the amount of such liquidated damages is reasonable in light of the anticipated or actual harm caused by failure, the difficulty of proof of loss, and the inconvenience or non-feasibility of otherwise obtaining an adequate remedy.

5. **TRADE-IN.** Buyer agrees that any boat, motor, and/or accessories to be traded-in by Buyer as part of this sale, if any, are subject to, at Seller's option, appraisal, survey and/or sea trial by Seller before final acceptances thereof, and that any trade-in allowance set forth on the front side of this Agreement may be adjusted to account for any defects or other detrimental conditions discovered through such appraisal which affect the value of the boat, motor and/or accessories taken in trade or Seller may elect not to accept trade. Buyer understands that Seller intends to immediately attempt to resell the boat, motor, and/or accessories being traded-in. Buyer agrees to immediately execute and deliver to Seller such documents of title as are necessary to enable Seller to sell the traded-in boat, motor and/or accessories to a prospective third party purchaser. Buyer further agrees that such traded-in boat, motor and/or accessories or the net cash derived by Seller from the sale of such traded-in boat, motor and/or accessories shall constitute an additional "deposit" for purposes of paragraph 4 above. In the event Seller invokes its option to cancel pursuant to the provisions of said paragraph 4, Buyer warrants that any traded-in boat, motor and/or accessories are owned solely by Buyer, free and clear of all liens, encumbrances and security interests of any kind, except as noted otherwise in this Agreement.

6. **PRIOR USE. Buyer acknowledges that a new boat being purchased pursuant to this Agreement may have hours of use prior to delivery to Buyer. This use may be the result of pretesting of the boat by the manufacturer, Seller, or potential buyers, as well as on-water transportation of the boat to the delivery site.**

7. **MODEL OR DESIGN CHANGES.** Buyer understands that the manufacturer retains the right to make changes in the model or design of its new boats, as well as its accessories, at any time. Buyer agrees that any such changes will not obligate either Seller or the manufacturer to make corresponding changes in the particular boat, motor, and/or accessories covered by this Agreement, either before or after the delivery thereof to Buyer.

8. **ENTIRE AGREEMENT.** This Agreement constitutes the entire agreement between the parties and no other verbal, written or printed representations, claims or inducements are incorporated into this Agreement, unless in writing and signed by both parties. This Agreement supercedes any prior Purchase Agreement between Buyer and Seller for the purchase of a boat, motor and/or accessories that had not been consummated. Except as specifically set forth in this Agreement, Seller disclaims any representations or statements by any agents, employees or representatives, whether verbal or in writing, in advertisements or brochures, and Buyer has not relied upon any such representations or statements.

9. **ATTORNEYS' FEES.** In the event it is necessary for Seller to employ an attorney to enforce any of the terms of this Agreement or to defend any lawsuit arising out of this Agreement, then Buyer shall pay all of Seller's costs, including reasonable attorney fees, whether incurred in trial, appellate or bankruptcy court proceedings, plus court costs, deposition, investigation, and travel expense and any other necessary expenses unless a judgment is entered against Seller for the complete relief sought in any complaint or pleading.

10. **GOVERNING LAW. THE PARTIES AGREE THAT THIS AGREEMENT SHALL BE GOVERNED BY THE LAWS OF THE STATE IN WHICH SELLER'S LOCATION DESIGNATED ON THE FRONT SIDE OF THIS ORDER IS SITUATED.**

11. **ASSIGNMENT.** This Agreement may not be assigned by the Buyer without the express written approval of the Seller.

12. **MISCELLANEOUS.** If any provision of this Agreement is held invalid, such invalidity shall not affect other provisions. Where a provision can be construed as valid, it shall be so construed. Seller is an independent business enterprise and not an agent of its distributor or the manufacturer and no party to this Agreement shall make such a claim. This Agreement will be binding on the parties and their respective heirs, legal representatives, successors and assigns.